[Cite as *Fields v. Van Ee*, 2026-Ohio-2926.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| KYLE FIELDS, | : | CASE NO. CA2025-09-080 |
| Appellant, | : | |
| vs. | : | OPINION AND JUDGMENT ENTRY 7/30/2026 |
| LAUREN VAN EE, | : | |
| Appellee. | : | |
| | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23 CV 96557


Sebaly Shillito + Dyer, and Bryan K. Penick and Zachary S. Arnold, for appellee.

Sams Fischer, LLC, and Robert S. Fischer, for appellant.


## **O P I N I O N**


**BYRNE, P.J.**

{¶ 1} Kyle Fields appeals the Warren County Court of Common Pleas' decision granting Lauren Van Ee's Civ.R. 12(C) motion for judgment on the pleadings, which dismissed Fields' defamation per se cause of action and derivative claim for punitive

damages against Van Ee with prejudice. For the reasons outlined below, we affirm the common pleas court's decision.

## I. Facts and Procedural History

{¶ 2} Fields and Van Ee married in 2006 and divorced in 2015. They have two children together: a daughter, A.F., born in 2008, and a son, D.F., born in 2011. Fields is a business owner and, according to the record, an active member of the community in and around Waynesville, Warren County, Ohio. This includes Fields' involvement in A.F.'s and D.F.'s schooling and athletic activities.

{¶ 3} On September 26, 2022, Van Ee filed a petition with the domestic relations court requesting that a civil protection order ("CPO") be issued against Fields, naming both herself and the parties' then-13-year-old daughter, A.F., as the persons to be protected. To support this request, Van Ee alleged various reasons why A.F. was supposedly refusing to see and/or visit Fields. Van Ee also alleged that Fields:

> forced sex during marriage, domestic violence harmed mother (Defendant) with beating via fist and door, threats by a gun July 11, 2009, several domestic violence episodes through marriage and threats of hitting me; threatened to beat me after our son was born, violent by throwing [and] breaking things while pregnant, recently stated to my father "why don't you just go ahead and die," children state there are a lot of guns in home, recently used son to get photos of [A.F.] and our home, secretly.

{¶ 4} Shortly after filing her CPO petition, the domestic relations court granted Van Ee a temporary ex parte CPO against Fields, thus suspending Fields' parenting time with A.F. and D.F. Upon receiving the court's ex parte order, Van Ee sent the order, along with a copy of her CPO petition, to the children's school. This ultimately led various school personnel to learn of the physical and sexual abuse allegations that Van Ee had levied against Fields, as set forth above. The domestic relations court subsequently dismissed Van Ee's CPO petition without a hearing. However, although her CPO petition had been

dismissed, Van Ee never notified A.F.'s and D.F.'s school of the dismissal.

{¶ 5} On September 25, 2023, Fields filed a complaint against Van Ee, alleging defamation and seeking punitive damages. Approximately 18 months later, on April 2, 2025, Fields filed an amended complaint asserting a revised defamation-per-se cause of action and a derivative claim for punitive damages against Van Ee. In support, Fields alleged that Van Ee's accusations of physical and sexual abuse set forth in her CPO petition were false and made to "gain an advantage with the Courts, school, experts, and counselors," as well as to "cause him damages, sending the petition for civil protection order to the minor children's school, knowing the allegations in said petition were false and would cause [him] harm" in both "the school and athletic communities." Fields also alleged that Van Ee "made said disclosure to the school with malicious intent," for which he had suffered actual damages totaling more than $100,000.

{¶ 6} On June 11, 2025, Van Ee filed a Civ.R. 12(C) motion for judgment on the pleadings. To support her motion, Van Ee alleged that Fields' defamation per se cause of action was based entirely on statements that she made as part of her CPO petition, statements that were protected by absolute privilege, thereby entitling her to judgment in her favor as a matter of law. To this, Fields countered, arguing that while Van Ee may be protected by absolute privilege for the statements that she made to the domestic relations court to support her CPO petition, the privilege did not extend to shield her from liability for then repeating her "false and malicious" accusations to their children's school, by separately providing the school with a copy of her CPO petition.

{¶ 7} The matter was referred to a magistrate, who, on July 2, 2025, issued a decision granting Van Ee's Civ.R. 12(C) motion. In so ruling, the magistrate stated, in pertinent part, as follows:

Upon review, the undersigned finds [Van Ee's] statements to the DR Court in the CPO proceeding are protected by absolute privilege and may not form the basis of a defamation action. The undersigned further finds [Van Ee's] act of providing those statements to the school are protected by absolute privilege, as providing the petition and ex parte CPO reasonably related to the judicial proceedings, in that visitation was impacted by the ex parte CPO.

{¶ 8} Continuing, the magistrate stated:

Further, the absolute privilege is neither waived or removed by [Van Ee] transmitting the statements to the school, as this would undermine the policy supporting litigation privilege, especially when the information disclosed is a matter of public record. While CPO cases are not readily available online, they are public record.

{¶ 9} On July 16, 2025, Fields filed an objection to the magistrate's decision. To support his objection, Fields argued that "[w]hile the statement to the Court is absolutely privileged, it is not privileged when sent to a third party, even if it is a public record." The common pleas court disagreed and overruled Fields' objection. In so doing, the common pleas court stated:

Here, [Van Ee] made statements during a judicial proceeding in her CPO petition that she then transmitted to her daughter's school. Not only was this necessary, as the child's visitation was impacted by the *ex parte* CPO, but to allow a defamation claim to stand based upon this conduct would undermine the policy supporting [the] litigation [privilege] and potentially hinder a parent's ability to file a protection order against their co-parent.

(Emphasis in original.)

{¶ 10} The common pleas court then concluded by quoting from the Ohio Supreme Court's decision in *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), its seminal decision on absolute privilege. In that case, the Ohio Supreme Court determined that, "[a]lthough the result may be harsh in some instances," and "a party to a lawsuit may possibly be harmed without legal recourse," on balance, "a liberal rule of absolute immunity is better policy,

as it prevents endless lawsuits because of alleged defamatory statements in prior proceedings."[1] *Id.* at 234.

## II. Fields' Appeal and Single Assignment of Error

{¶ 11} Fields filed a timely notice of appeal from the common pleas court's decision. After the parties' briefing and the conclusion of oral argument, Fields' appeal was submitted to this court for consideration and is now properly before this court for decision. To support his appeal, Fields has raised one assignment of error, arguing that the common pleas court erred in granting Van Ee's Civ.R. 12(C) motion for judgment on the pleadings in this case. We disagree.

### A. De Novo Standard of Review Applies

{¶ 12} "A trial court's decision on a Civ.R. 12(C) motion for judgment on the pleadings is reviewed by an appellate court de novo." *Elboco Ents. v. Billman*, 2020-Ohio-4877, ¶ 18 (12th Dist.). "De novo means that this court uses the same standard that the common pleas court should have used." *Boehm v. Ohio Dept. Pub. Safety*, 2025-Ohio-5092, ¶ 8 (12th Dist.). "Therefore, when conducting a de novo review, this court independently reviews the trial court's decision without giving it any deference." *Colwell v. Bob & Shawn Ents., LLC*, 2026-Ohio-976, ¶ 16 (12th Dist.). That is, under a de novo standard of review, "we examine the legal questions with fresh eyes, giving no deference to the trial court's conclusions." *Smith v. Mercy Health-Clermont Hosp., LLC*, 2025-Ohio-1590, ¶ 13 (12th Dist.).

---

1. It is almost always inappropriate for courts to decide—or even discuss—policy questions relating to the law. *See State v. Rarden*, 2025-Ohio-5798, ¶ 20 (12th Dist.), quoting *State v. Dhimal*, 2026-Ohio-1805, ¶ 42 (12th Dist.); *State v. Harris*, 2022-Ohio-3310, ¶ 21-23 (1st Dist.); *Lovejoy v. Diel*, 2021-Ohio-1124, ¶ 40, fn.5 (12th Dist.). However, we must reluctantly do so in this opinion because the absolute litigation privilege is a creation of common law, not statute, and the Ohio Supreme Court has repeatedly discussed the "policy" behind the privilege when examining its scope. *See, e.g.*, *Surace*, 25 Ohio St.3d 229 at syllabus.

*B. Civ.R. 12(C) Motion for Judgment on the Pleadings Standard*

{¶ **13**} Pursuant to Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "'Civ.R. 12(C) motions are specifically for resolving questions of law.'" *State ex rel. Conomy v. Rohrer*, 2025-Ohio-5296, ¶ 22, quoting *State ex rel. Midwest Pride IV v. Pontious*, 1996-Ohio-459, ¶ 21. To that end, "[d]ismissal is appropriate under Civ.R. 12(C) when (1) the court construes as true, and in favor of the nonmoving party, the material allegations in the complaint and all reasonable inferences to be drawn from those allegations and (2) it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief." *Reister v. Gardner*, 2020-Ohio-5484, ¶ 17. Stated differently, in applying Civ.R. 12(C), "[j]udgment on the pleadings is appropriate when no material factual issues exist and the movant is entitled to judgment as a matter of law." *State ex rel. Harris v. Schwendeman*, 2025-Ohio-4769, ¶ 10. When making this determination, Civ.R. 12(C) permits consideration of both the complaint and the answer. *Conaway v. Mt. Orab*, 2021-Ohio-4041, ¶ 11 (12th Dist.).

*C. Defamation Per Se and the Absolute Privilege for Statements Made in a Judicial Proceeding aka the Litigation Privilege*

{¶ **14**} "Defamation is defined as a false publication which injures a person's reputation." *Dale v. Ohio Civ. Serv. Emps. Assn.*, 57 Ohio St.3d 112, 117 (1991), citing *Cleveland Leader Printing Co. v. Nethersole*, 84 Ohio St. 118 (1911). Defamatory statements fall into one of two categories: defamation per se or defamation per quod. *See Holtrey v. Wiedeman*, 2023-Ohio-2440, ¶ 23 (12th Dist.). "[D]efamation per quod occurs when a statement is defamatory through interpretation or innuendo." *Drone Consultants, LLC v. Armstrong*, 2016-Ohio-3222, ¶ 30 (12th Dist.). "[W]hen a complaint alleges defamation per quod, the complaint must allege special damages." *Whiteside v. Williams*,

2007-Ohio-1100, ¶ 4 (12th Dist.).

{¶ 15} On the other hand, "[a] statement that on its face reflects on the character of a person by bringing the person into ridicule, hatred, or contempt, or injures the person in the person's trade or profession is defamatory per se, and damages are presumed." *Dayton Bar Assn. v. Baker*, 2026-Ohio-2673, ¶ 22, fn. 2, citing *Becker v. Toulmin*, 165 Ohio St. 549, 553 (1956). This includes, for instance, a statement that "supports an indictable criminal offense involving moral turpitude or infamous punishment" or that "imputes some loathsome or contagious disease that excludes one from society." *Gingo v. Hanak*, 2026-Ohio-1452, ¶ 19 (8th Dist.).

{¶ 16} However, even when per se defamatory, "[a] statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." *Hecht v. Levin*, 1993-Ohio-110, ¶ 7, citing *Surace*, 25 Ohio St.3d 229 at syllabus. The absolute privilege afforded to statements made in judicial proceedings, also known as the litigation privilege, *see State v. Brown*, 2022-Ohio-4347, ¶ 19, "is designed to protect 'the integrity of the judicial process' by affording participants in litigation with immunity from future lawsuits over relevant statements made during judicial proceedings." (Emphasis deleted.) *Reister v. Gardner*, 2020-Ohio-5484, ¶ 14, quoting *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449 (1983). That is, "the litigation privilege facilitates the disclosure of 'pertinent information' and helps to 'ascertain the truth.'" *Reister*, quoting *Willitzer*. This is why, as noted above, the absolute privilege applies only "to statements that bear 'some reasonable relation to the judicial proceeding in which' they appear." *Id.*, quoting *Surace*. The absolute litigation privilege is a creation of common law, not statute, and the Ohio Supreme Court.

*D. Fields' Arguments and Analysis*

{¶ 17} There appears to be no dispute that, if false, the allegations of physical and sexual abuse that Van Ee levied against Fields in support of her CPO petition are per se defamatory. *See Gosden v. Louis*, 116 Ohio App.3d 195, 207 (9th Dist.) (generally noting that "[a] writing that accuses a person of committing a crime" is per se defamatory). There also appears to be no dispute that Van Ee was absolutely privileged to include those per se defamatory allegations in her CPO petition when she filed it with the domestic relations court. The dispute in this case concerns whether that absolute privilege also applied when Van Ee provided a copy of her CPO petition to A.F.'s and D.F.'s school, thereby causing the children's school to learn of the physical and sexual abuse allegations that she had levied against Fields in support of her petition, as set forth above.

{¶ 18} But Fields argues that while Van Ee's allegations are "absolutely protected" when she presented them to the domestic relations court as part of her CPO petition, "when that same statement is then made outside the court, it is not protected speech," and the absolute privilege initially afforded to Van Ee, which shielded her from liability, was removed. To hold otherwise, Fields argues, would allow Van Ee "to not just share the petition with the children's school, but would allow her to freely share the petition, including the defamatory statements, with anybody."

{¶ 19} In granting Van Ee's Civ.R. 12(C) motion, the common pleas court relied on the Second District Court of Appeals' decision in *Horenstein, Nicholson & Blumenthal, LPA v. Hilgeman*, 2021-Ohio-3049 (2d Dist.). In that case, the Second District reversed a trial court's decision finding that a law firm had waived its absolute privilege for alleged defamatory statements that it had made in a complaint brought against one of its former associates, after the firm provided a copy of its complaint to a local newspaper reporter, who then published those statements in an online news article. In so doing, the Second

District in *Horenstein* recognized that "removing the privilege for simply transmitting a complaint and explaining the litigation would undermine the policy supporting the [absolute] privilege, especially when the information disclosed is a matter of public record anyway." *Id.* at ¶ 123.

{¶ 20} In reaching this decision, the Second District cited a decision from the Supreme Court of New Mexico that rejected a lower court's finding that "republishing, repeating, or explaining a complaint that was filed in good faith" removes the absolute privilege. *Id.* at ¶ 121. In that regard, the New Mexico Supreme Court stressed that "[i]n the age of digital communication, it is illogical to protect allegations in a publicly filed complaint but not repetition or explanation of those same allegations outside the courthouse." *Helena Chem. Co. v. Uribe*, 281 P.3d 237, 246 (N.M. 2012). In the same decision, the New Mexico Supreme Court also stressed that:

> the harm resulting to a defamed party from delivery of pleadings in a lawsuit to the news media could demonstratively be no greater than if the news media found the pleadings on their own and advising the media that a lawsuit has been filed, including a basic description of the allegations, has no practical effect different from providing the pleadings to the media.

*Id.* at 246-247.

{¶ 21} Although not cited in its opinion, the Second District's holding in *Horenstein* is reminiscent of its earlier holding in *Bales v. Hack*, 31 Ohio App.3d 111 (1986), in which the Second District similarly held:

> Once it is determined that the pleading in issue meets the standard of bearing some reasonable relationship to the action, the grant of absolute privilege attaches. Subsequent republication of matters within those privileged pleadings in no way abrogates the grant of absolute immunity. Moreover, the pleading, once filed in the action, becomes a matter of public record, subject to possible republication in the newspaper.

*Id.* at 113.

{¶ 22} Given the above, we find the law in Ohio to be clear. In Ohio, once a pleading is filed as part of a judicial proceeding and becomes a public record, the absolute privilege that attached to its creation will ordinarily follow the document wherever it may travel. This is because, as noted above, the underlying policy of encouraging candor in such proceedings is not diminished by the pleading's being shared with a third party, including the news media. Therefore, when applying these principles to the case at bar, the common pleas court did not err in granting Van Ee's Civ.R. 12(C) motion for judgment on the pleadings in this case. The common pleas court instead properly determined that, "to allow a defamation claim to stand based upon this conduct [that is, Van Ee's conduct in this case] would undermine the policy supporting [the] litigation [privilege]." Accordingly, finding no error in the common pleas court's decision, Fields' single assignment of error lacks merit and is overruled.

{¶ 23} In so holding, we acknowledge Fields' concerns about the risk of overpublication and its potential impact on the absolute privilege afforded to statements made in judicial proceedings. But that is not what happened here. Van Ee did not share her CPO petition with just anyone, willy-nilly; she did not send it to the news media, as was the case in *Horenstein*, nor did she post it on social media. Rather, as the record shows, after being awarded a temporary ex parte CPO against Fields, Van Ee merely sent that ex parte order, along with a copy of her CPO petition, to A.F.'s and D.F.'s school, notifying the school that Fields' visitation time with the children had been suspended.

{¶ 24} If the subsequent republication to the news media does not abrogate the grant of absolute privilege, then neither should the privilege be removed in circumstances where the republication involves a school. This is because, unlike the news media, a school has virtually no incentive to republish it, either online or in the newspaper. What

the school then did with that information in this case—allegedly allowing Van Ee's accusations of physical and sexual abuse that she had levied against Fields to spread amongst school personnel—cannot, and should not, be attributed to Van Ee. To the extent Fields argues otherwise, such argument lacks merit.

### III. Conclusion

{¶ 25} For the reasons outlined above, and having now overruled Fields' single assignment of error presented for review, Fields' appeal from the common pleas court's decision granting Van Ee's Civ.R. 12(C) motion for judgment on the pleadings in this case is denied.

{¶ 26} Judgment affirmed.

HENDRICKSON and SIEBERT, JJ., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Melena S. Siebert, Judge*